# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**ALFREDA STALLION,**

      **Defendant/Petitioner,**

                    **CIVIL ACTION NO. 2:18cv468**
  **v.**                  **[ORIGINAL CRIMINAL NO. 2:14cr137-9]**

**UNITED STATES OF AMERICA,**

      **Respondent.**

## OPINION

This matter comes before the court on Petitioner's, Alfreda Stallion, Motion pursuant to 28 U.S.C. § 2255 ("Motion" or "§ 2255 Motion"). ECF No. 646; see Order of January 30, 2019, ECF No. 657 (noting the court will proceed on Petitioner's submission received on September 4, 2018, ECF No. 646, pursuant to her Response, ECF No. 656).

### I. PROCEDURAL HISTORY

On October 22, 2014, a federal grand jury returned an Indictment against Petitioner and her co-Defendants, Baffour E. Opoku, Doretha Selby-Diggs, Lisa Barrett, Barbara Bing, Corey Etheridge, Jacqueline Harris, Verline Harris, Arlette Johnson, and Johnny Stallion, in a conspiracy to commit health care fraud. ECF No. 3. On March 5, 2015, a federal grand jury returned a Superseding Indictment against Petitioner and her co-Defendants, Baffour E. Opoku, Barbara Bing, Verline Harris,

Arlette Johnson, and Johnny Stallion. ECF No. 197. On May 5, 2015, the jury trial commenced for Petitioner and her co-Defendants Barbara Bing, Verline Harris, Arlette Johnson, and Johnny Stallion.[1] ECF No. 268. On June 2, 2015, the jury found Petitioner guilty on Counts Thirty-Five and Sixty-Seven. ECF No. 314. Count Thirty-Five involved False Statements Relating to Health Care Matters, in violation of 18 U.S.C. §§ 1035 and 2, and Count Sixty-Seven involved Theft of Public Money, in violation of 18 U.S.C. §§ 641 and 2. ECF No. 197.

On November 30, 2015, the court sentenced Petitioner on Count Thirty-Five to sixty (60) months imprisonment, three (3) years supervised release, a $100.00 special assessment, and $728.00 in restitution. ECF No. 480. On Count Sixty-Seven, the court sentenced Petitioner to ninety (90) months imprisonment, to be served concurrently with Count Thirty-Five; three (3) years supervised release, to run concurrently with Count Thirty-Five; a $100.00 special assessment; and $20,842.16 in restitution. Id. Petitioner timely filed an appeal, and on August 31, 2017, the Fourth Circuit Court of Appeals affirmed Petitioner's conviction and sentence. United States v. Harris, 706 F. App'x 105 (4th Cir. 2017) (Petitioner, inter alia, was an appellant in this appeal).

---

[1] Baffour E. Opoku remains a fugitive.

Petitioner first filed her Motion on August 27, 2018.[2] ECF No. 645. This Motion was defective as Petitioner did not provide two copies pursuant to Rule 3(a) of the Rules Governing Section 2255 Proceedings ("Section 2255 Rules"). On September 4, 2018, the court received a second submission from Petitioner, which provided the required copies of her Motion under Rule 3(a) of the Section 2255 Rules. ECF No. 646. Due to differences between the two submissions, the court issued a Striking Order, requiring Petitioner to notify the court upon which submission she is proceeding. ECF No. 655. By a letter dated January 24, 2019, ECF No. 656, Petitioner requested that the court proceed on her second submission, ECF No. 646, and the court entered an Order on January 30, 2019, finding Petitioner's first submission moot and indicating that it would proceed on the second submission, ECF No. 657.

## II. LEGAL STANDARDS

### A. Habeas Corpus

A petitioner may challenge a sentence imposed by a federal court if: (1) the sentence violates the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the statutory

---

[2] The court accepts Petitioner's filings as effectively filed on the date Petitioner certifies she placed them in the prison's internal mailing system. See Houston v. Lack, 487 U.S. 266, 276 (1988) (articulating the prison mailbox rule).

maximum; or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A sentence is "otherwise subject to collateral attack" if a petitioner shows that the proceedings suffered from "a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

Petitioner bears the burden of proving one of those grounds by a preponderance of the evidence. See Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). If she satisfies that burden, the court may vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(b). If the Motion, however, when viewed against the record, shows that Petitioner is not entitled to relief, the court may summarily deny the Motion. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## B. Procedural Default

Claims that could have been "fully and completely addressed on direct review based on the record" are considered procedurally defaulted, if raised for the first time during collateral review. Bousley v. United States, 523 U.S. 614, 622 (1998). In order to obtain collateral relief based on issues that could have been raised on direct appeal, but were not, a petitioner must ordinarily show "'cause' excusing his . . . procedural default," and "'actual prejudice' resulting from the

errors of which he complains." United States v. Frady, 456 U.S. 152, 167-68 (1982); see also Massaro v. United States, 538 U.S. 500, 504 (2003) ("[C]laims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice."). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). Prejudice is shown when the alleged errors worked to a petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170 (emphasis omitted).

Even in the absence of cause for the procedural default and resulting prejudice, a petitioner may proceed with a collateral attack, if she is able to show that a fundamental miscarriage of justice would result were her claim denied. United States v. Maybeck, 23 F.3d 888, 892 (4th Cir. 1994). To demonstrate a "miscarriage of justice," a petitioner "must show actual innocence by clear and convincing evidence." United States v. Williams, 396 F. App'x 951, 953 (4th Cir. 2010); Mikalajunas, 186 F.3d at 493.

## C. Recusal

Two statutory sections, 28 U.S.C. § 144 and § 455, govern the recusal of federal district judges. The level of bias necessary to require disqualification under §§ 144 and 455(a) and (b)(1) is generally considered to be the same. Liteky v. United States, 510 U.S. 540, 548 (1994).

Section 144 provides that:

> [w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein.

28 U.S.C. § 144. Section 144 requires that the party submitting the affidavit must accompany it "by a certificate of counsel of record stating that it is made in good faith." Id.; see also In re Beard, 811 F.2d 818, 827 n.15 (4th Cir. 1987). Here, although Petitioner did sign her motion, there is no accompanying certificate of good faith. The procedural requirements of § 144 are strictly scrutinized for form, as well as for sufficiency. Thus, the court cannot properly consider Petitioner's motion under § 144.

Section 455(a), on the other hand, provides that the judge may disqualify herself sua sponte "in any proceeding in which h[er] impartiality might reasonably be questioned." Id. Section 455(b) details a number of situations in which the judge must

6

recuse herself. These include circumstances in which the judge "has a personal bias or prejudice concerning a party." Id. § 455(b)(1). Although this court will only consider whether it must recuse itself pursuant to 28 U.S.C. § 455, the analysis would similarly apply to a motion under § 144. See Liteky, 510 U.S. at 548.

In Liteky, the Supreme Court explained that the § 455(a) standard was an objective one, thus requiring recusal whenever "impartiality might reasonably be questioned." Id. Judicial rulings alone will rarely constitute a valid reason for recusal; rather they form the basis for an appeal. Id. at 555. Moreover, judicial opinions and rulings based on current or prior proceedings likewise do not constitute a valid basis for disqualification, "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id.

### D. Prosecutorial Misconduct

Petitioner claims prosecutorial misconduct violated her Sixth Amendment right to retain counsel of choice, Fifth Amendment right to due process, and Fifth Amendment right to indictment by a grand jury.

### 1. Sixth Amendment Right to Retain Counsel of Choice

"[T]he pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." Luis v. United States, 136 S. Ct. 1083, 1088 (2016).

Untainted assets are property that "belongs to the defendant pure and simple," and are not "otherwise 'traceable' to a crime." Id. at 1090. However, Luis did not announce a new substantive constitutional rule or watershed rule of criminal procedure that is retroactive on collateral review. United States v. Hopkins, 920 F.3d 690, 702-04 (10th Cir. 2019). Moreover, Luis only pertains to untainted assets. Luis, 136 S. Ct. at 1088.

## 2. Fifth Amendment Right to Due Process

"[D]ue process is violated not only where the prosecution uses perjured testimony to support its case, but also where it uses evidence which it knows creates a false impression of a material fact." Hamric v. Bailey, 386 F.2d 390, 394 (4th Cir. 1967) (citing Miller v. Pate, 386 U.S. 1 (1967)). "[D]ue process requires that the prosecution refrain from deliberately misrepresenting the truth when presenting its case." Id. To prevail on a claim regarding perjured testimony, Petitioner is "required to demonstrate that: (1) the testimony was false; (2) the Government knew the testimony was false; and (3) there is a reasonable probability that the false testimony could have affected the verdict." United States v. Roane, 378 F.3d 382, 400 (4th Cir. 2004) (internal citations omitted).

Under Brady v. Maryland, 373 U.S. 83 (1963), the government "violates a defendant's right to due process if it withholds

evidence that is favorable to the defense and material to the defendant's guilt or punishment." <u>Smith v. Cain</u>, 565 U.S. 73, 75 (2012) (citing <u>Brady</u>, 373 U.S. at 87). To make out a <u>Brady</u> violation, Petitioner must show that the undisclosed evidence is: (1) favorable to Petitioner because it is exculpatory or impeaching; (2) material to Petitioner's defense; and (3) the government had such information before and failed to disclose it. <u>United States v. Wilson</u>, 624 F.3d 640, 661 (4th Cir. 2010). "Evidence is 'exculpatory' and 'favorable' if it 'may make the difference between conviction and acquittal' had it been 'disclosed and used effectively.'" <u>Id.</u> (quoting <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985)). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Bagley</u>, 473 U.S. at 682.

### 3. Fifth Amendment Right to Grand Jury Indictment

"The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment." <u>Stirone v. United States</u>, 361 U.S. 212, 218-19 (1960). "[A]fter an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." <u>Id.</u> at 215-16. Thus, "a constructive amendment violates [a defendant's] Fifth Amendment right to be indicted by a grand jury." <u>United States v. Randall</u>,

171 F.3d 195, 203 (4th Cir. 1999). A constructive amendment occurs

> [w]hen the government, through its presentation of
> evidence and/or its argument, or the district court,
> through its instructions to the jury, or both,
> broadens the bases for conviction beyond those charged
> in the indictment[,] . . . "such that the defendant is
> actually convicted of a crime other than that charged
> in the indictment."

Id. (first citing United States v. Redd, 161 F.3d 793, 795 (4th Cir. 1998); and then quoting United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991)).

### E. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, Petitioner must show that: (1) her attorney's representation "fell below an objective standard of reasonableness"; and (2) due to counsel's unprofessional errors, Petitioner was prejudiced. See Strickland v. Washington, 466 U.S. 668, 687–88 (1984). To demonstrate actual prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694.

### III. GROUNDS FOR RELIEF

Petitioner raises four (4) grounds for relief, each with numerous subparts. Ground One (a) through (i) alleges various errors involving judicial misconduct. Ground Two (a) through (h) alleges various issues of prosecutorial misconduct. Ground Three

(a) through (j) raises various claims of ineffective assistance of counsel. Ground Four (a) and (b) alleges collusion among the trial court, the prosecutor, and Petitioner's counsel. Each ground will be addressed in turn.

Moreover, at a threshold level, the court notes that transcripts of the sixteen-day jury trial proceeding in Petitioner's case, as well as of her sentencing, are all of record in the case, and were all filed prior to Petitioner's direct appeal. ECF Nos. 499, 500, 501, 502, 503, 504, 505, 506, 507, 508, 509, 510, 511, 512, 513, 514, 518, 519, 520.

### A. Judicial Misconduct

In Ground One, Petitioner claims that trial court judicial misconduct, set forth in Ground One (a) through (i), requires recusal of the undersigned judge. Consequently, the court will first address Ground One (a) through (i) to determine whether recusal is warranted under the legal standards set forth <u>supra</u> Part II.C.

Ground One (a) asserts that the "[t]rial court erred by 'Arbitrarily imposing a Predetermined Sentence' on Movant." The record clearly reflects that no predetermined sentence was imposed on Petitioner or any other co-Defendant in this health care fraud case. Attached hereto, as demonstrative Exhibit A, is a summary spreadsheet prepared for the court by the probation office to reflect the sentencing outcome of each Defendant in

the case, together with his or her base offense level, the guidelines adjustments applied, the guidelines as determined before objections, the guidelines determined after findings were made before sentencing, the statutory penalties, and the sentence imposed.[3] The record of this case and of these Defendants, and their sentencings, clearly shows that each Defendant received individual consideration based on his or her background Pre-Sentence Report ("PSR"), involvement in the offense, criminal history, and all of the factors under 18 U.S.C. § 3553.[4]

The statement in Ground One (a), quoted by Petitioner, was allegedly made during the sentencing of co-Defendant Jacqueline Harris.[5] The statement, as quoted, "[n]o one is just receiving

---

[3] The facts reflected in the spreadsheet in Exhibit A are of public record as part of the sentencings of each Defendant and do not reflect confidential material from the Pre-Sentence Reports ("PSRs"). See infra note 4.

[4] Petitioner alludes that somehow the use of a spreadsheet as a reference is inappropriate. The spreadsheet is merely a summary of the existing record, reflecting the sentencing status of each Defendant in the case at the time. See supra note 3. The spreadsheet summarizes voluminous records involving a sophisticated, multi-defendant health care fraud conspiracy. Such spreadsheets are used by probation officers and courts as reference tools, nothing more, and are never a substitute for the record itself and the PSRs.

[5] Ms. Harris, even though she initially obstructed justice by lying to the grand jury in the case, pled guilty immediately and fully accepted responsibility for her involvement in the health care fraud. Ms. Harris's guidelines range was 70 to 87 months incarceration, and she received a variant sentence of 60

12

probation, everyone on this case is going to prison," is not in the record. Even assuming such a statement was made, or one to that effect, the context of any statement at a sentencing would be essential. The context would have been in regard to the nature and circumstances of the Defendant(s) involvement in a 2.4 million dollar health care fraud conspiracy.

Ground One (b) asserts that the trial court erred by refusing to allow Petitioner to present favorable evidence at sentencing, thereby violating the due process clause. A full review of the record, particularly the sentencing proceeding of Petitioner, provides no support for this allegation. See ECF Nos. 518, 519.

Ground One (c) alleges that the trial court made an unfair and biased statement to co-Defendant, Jacqueline Harris, while she was testifying as a government witness at trial. Tr. Proceedings Day 7 at 1625-1734, ECF No. 506. Petitioner again offers no context for the statement in Ms. Harris's lengthy testimony or any support for Petitioner's conclusion that "the outcome [for Petitioner] might have been not guilty on all counts," but for this statement. Forty-five (45) government witnesses testified and five (5) Defendant witnesses testified

---

months imprisonment under the factors of 18 U.S.C. § 3553. She later testified at the trial of this case and received a further sentence reduction. As an aside, and only because of Petitioner's allegations in the § 2255 Motion, Ms. Harris is an African American female. See infra discussion of Ground One (e).

in this multi-week trial, and Petitioner's claim that she might have been found not guilty due to one statement during Ms. Harris's testimony is belied by the overwhelming evidence against her in the case.

Ground One (d) alleges that the trial court interfered with the defense cross-examination in giving erroneous advice on who was an "Expert Witness." The full record of trial was before the court of appeals and continues to be before this court now. The record reflects no improper interference with defense cross-examination, no erroneous expert witness instruction, and no error in instructing the jury that they could "use your common sense" in judging the evidence, because they can. The errors alleged here are simply without basis in the record or the law.

Ground One (e) details various sentencing disparity for individuals from other circuits, other judges, and amongst co-Defendants. Many of the cases listed were not before this court or in this circuit, i.e., United States v. Farha, United States v. Behrens, United States v. Kale, United States v. Clay, and United States v. Ajoku.[6] Another case cited by Petitioner was

---

[6] Although Petitioner's citation to these cases did not include a case number, Petitioner is likely referring to United States v. Farah et al., No. 8:11-cr-115 (M.D. Fla.), and United States v. Ajouku, No. 2:08-cr-1094-5 (C.D. Cal.) See United States v. Clay, 832 F.3d 1259, 1266 (11th Cir. 2016) (noting corresponding sentences for defendants Todd Farha, Paul Behrens,

United States v. Welsh, 2:04cr148-1 (E.D. Va. 2004) (Smith, J.). Mr. Welsh received a sentence from the undersigned judge of 240 months for his involvement in a conspiracy to commit mail and wire fraud, and he remains incarcerated on this sentence. The case involving Mr. Welsh offers no support for Petitioner's allegations of sentencing disparity due to racial and gender bias in her case. Mr. Welsh, a Caucasian male, was sentenced to 20 years incarceration for his involvement in a mail and wire fraud conspiracy. Petitioner, an African American female, was sentenced to 7½ years for her involvement in this health care fraud conspiracy. Mr. Welsh's situation and case are simply not on point with Petitioner's and actually negate her allegations of racial and gender bias against her. In sum, Ground One (e) is an example of this § 2255 Motion being rife with unsupported, inaccurate, rambling, and irrelevant information and allegations.

Moreover, the summary spreadsheet, attached to the Opinion as demonstrative Exhibit A, reflects that the Defendants in this

---

William Kale, and Peter Clay, who were involved in a health care fraud); Judgment, ECF No. 371, United States v. Ajouku, No. 2:08-cr-1094-5 (C.D. Cal. June 13, 2011) (sentencing defendant Ajouku to 13 months on each of four counts of false statements relating to health care matters to run concurrently). The facts of these cases, i.e., the nature, duration, and amount of the fraud; the involvement of the defendants therein; the criminal history of these defendants; and the factors of 28 U.S.C. § 3553(a), all differed in varying respects. It serves no purpose to belabor them further here, as they do not support Petitioner's habeas corpus case.

case received guideline sentences based upon their criminal history, their offense level, their involvement in the crime, their acceptance of responsibility, and the factors under 18 U.S.C. § 3553(a). As noted previously, Jacqueline Harris did receive a variant sentence of 60 months.[7] There was no sentencing disparity in this case, as reflected in the record of this case and in the other cases cited by Petitioner. An examination of each of these cases on its own merits will clearly support this conclusion. The allegations here are simply not supported by the records of the cases.

In summary, there is no evidence of racial or gender bias or disparity in the sentencing of Petitioner.[8] All of the Defendants in this health care fraud case were African American, four being male and eight being female, and there is no disparity among the sentences in this case or between this case and the other cases cited by Petitioner, many of which were not in this court and involve individuals of varying race, sex, criminal history, and circumstances. Ground One (a) through (e) lack merit and record support.

---

[7] See supra note 5. Only one other Defendant, Glenda Fauntleroy, who was charged with a misdemeanor and was sentenced by United States Magistrate Judge Douglas E. Miller to five months imprisonment, received a sentence below her guideline range.

[8] The text of this footnote is set forth in Appendix A to the Opinion and filed **UNDER SEAL.**

Next, Ground One (f) alleges that the trial court erred by allowing the government to switch the original indictment. This ground is frivolous. There was absolutely no tampering with evidence, no evidence was compromised, and no indictment was improperly switched. The court simply cannot address a negative that does not exist with no record support, and Petitioner's allegations are just that.

Ground One (g) alleges that the trial court erred in not declaring a mistrial, once it was determined that the jury was tainted. First, the jury was not tainted. Second, there was no motion for a mistrial and no mistrial was warranted.

Ground One (h) alleges that the trial court erred by including a sixteen (16) level enhancement for the loss amount in Petitioner's case. There is no merit to this argument; it was raised on appeal, and the Fourth Circuit concluded that the trial court properly applied the enhancements relating to loss amount because "the record reveals that the Government proved the amount of loss to the requisite degree of certainty and that the district court's resulting estimate was not clearly erroneous." United States v. Harris, 706 F. App'x 105, 107 (4th Cir. 2017) (citing United States v. Catone, 769 F.3d 866, 876 (4th Cir. 2014); U.S.S.G. § 2B1.1 cmt. n.3(c)).

Finally, Ground One (i) claims that the above litany of "Judicial Misconduct" requires a recusal. First, none of the

allegations are meritorious, and they all involve judicial rulings. See, e.g., Liteky v. United States, 510 U.S. 540, 555 (1994). Further, these are allegations involving trial errors and they should all have been raised on appeal and are now procedurally defaulted. See, e.g., Bousley v. United States, 523 U.S. 614, 622 (1998).[9] Moreover, not only are they procedurally defaulted, but there is no miscarriage of justice in this case, see, e.g., United States v. Mikalajunas, 186 F.3d 490, 492-93, 495-96 (4th Cir. 1999), as Petitioner's guilt beyond a reasonable doubt on the counts of conviction for which she was sentenced was based upon overwhelming evidence in a sixteen-day jury trial.

Accordingly, Petitioner's collateral attack on her conviction and sentence based on judicial misconduct fails, and there is no basis upon which to recuse the undersigned. Ground One is **DENIED**.

### B. Prosecutorial Misconduct

Ground Two (a) through (h) allege various claims of prosecutorial misconduct. Ground Two (a) alleges prosecutorial misconduct because Petitioner was "unable to sell her 2006 BMW because [of] a pretrial freeze on her assets," and therefore she was unable to obtain an attorney of her choice. She claims she

---

[9] Ineffective assistance of counsel did not occur to excuse the default. See infra Part III.C.

was then forced to accept an ineffective court-appointed attorney. She further claims the United States did not have the legal authority to restrain her assets. First, her court-appointed attorney, Mr. Yarow, was not ineffective. <u>See</u> <u>infra</u> Part III.C. Further, Petitioner is simply wrong about her frozen assets; her assets were legally restrained. <u>See</u> ECF No. 7 (Mot. Restraining Order); ECF No. 8 (Restraining Order); ECF No. 445 (Mot. Unseal Mot. Restraining Order & Restraining Order); ECF No. 447 (Order Unsealing Mot. Restraining Order & Restraining Order).

Ground Two (c) alleges prosecutorial misconduct with respect to the government's Motion to Depose, the Preliminary Forfeiture Order, and the obstruction of justice enhancement Petitioner received at sentencing. Contrary to Petitioner's assertion, the prosecutors did not perjure themselves when they represented in the Motion to Depose Petitioner that "[t]he government has reached out to the defendant twice, through counsel, to inquire about the whereabouts of the 2006 BMW." ECF No. 400 at 1-2. At the sentencing proceedings held on November 5, 2015, Petitioner's attorney confirmed that the government contacted him twice regarding the whereabouts of the 2006 BMW. Sentencing Tr. Part I at 32, ECF No. 518. Nor did the prosecutors perjure themselves when they represented in that same motion that "[o]n both occasions, the defendant indicated

to the government, through counsel, that she refused to cooperate in the endeavor to find the forfeited 2006 BMW." Mot. Depose at 2. Petitioner's attorney clarified at the sentencing proceedings held on November 5, 2015, that on the first occasion he was contacted, he indicated Petitioner's unwillingness to cooperate without speaking with Petitioner. Sentencing Tr. Part I at 32. Petitioner was not prejudiced by this miscommunication between prosecutors and Petitioner's attorney, because the court accepted Petitioner's attorney's clarification and indicated that the court did not attribute the first refusal to cooperate to Petitioner. Id. at 33. Moreover, the court denied the government's Motion to Depose, ECF No. 400, by Order entered December 2, 2015, ECF No. 484.

Nor was the Preliminary Order of Forfeiture in retaliation for any complaint Petitioner may have made to the Virginia Bar Association. The Restraining Order, served on Petitioner at the time of her arrest on October 24, 2014, put Petitioner on notice that her 2006 BMW 325i would be subject to forfeiture upon conviction. Restraining Order at 2, 5, ECF No. 8; Sentencing Tr. Part II at 21-22, ECF No. 519. Thus, the Preliminary Order of Forfeiture, ECF No. 365, simply ordered the forfeiture of the 2006 BMW 325i following Petitioner's conviction in accordance with the notice Petitioner previously received. A Motion for Entry of a Final Order of Forfeiture was then filed by the

government on April 26, 2016, ECF No. 527, well after Petitioner's conviction and sentencing in 2015. The court then entered the Final Order of Forfeiture on April 28, 2016. ECF No. 528.

Furthermore, there is no evidence of prosecutorial misconduct with respect to the enhancement Petitioner received at sentencing for obstruction of justice. At the initial sentencing proceedings held on November 5, 2015, the court continued Petitioner's sentencing proceeding and ordered briefing regarding the obstruction of justice enhancement. The transcript of the continued sentencing proceedings held on November 30, 2015, shows that the court heard evidence, considered the relevant legal authority, and made findings on the record regarding the appropriateness of the enhancement for obstruction of justice. Sentencing Tr. Part II at 20-27.

Ground Two (e) alleges that the prosecutor, with the assistance of Petitioner's attorney, tampered with evidence during trial. Specifically, Petitioner claims that she located Zaneta Campbell's file during the trial and showed her attorney over 200 progress notes in the file that she did not write. Petitioner further claims that her attorney showed these notes to the government during a recess, but the notes were missing from her attorney's file after the recess. There is no support in the record for these allegations. No recess was taken during

Petitioner's attorney's cross-examination of Zaneta Campbell. Tr. Proceedings Day 7 at 1603-04. To the extent Petitioner alleges the transcript of the trial was altered, she has provided no support for that allegation.

Ground Two (g) alleges "inconsistent findings" related to Petitioner's progress notes that were dated during the time that Petitioner was on vacation. Petitioner is mistaken that this finding is inconsistent with a finding that she submitted false progress notes. A finding that Petitioner's progress notes were dated during the time she was on vacation would be consistent with a finding that the progress notes were false.

Finally, Ground Two (b) (prosecutor knowingly used false evidence to convict Petitioner), Ground Two (d) (prosecutor violated Brady v. Maryland), Ground Two (f) (prosecutor used false testimony of Zaneta Campbell), and Ground Two (h) (prosecutorial misconduct by a constructive amendment to the indictment) have absolutely no record support and are replete with mischaracterization of the record facts and context within which these allegations are made by Petitioner. They merit no further discussion by the court.

Accordingly, Petitioner's collateral attack on her conviction and sentence based on prosecutorial misconduct fails. Ground Two is **DENIED**.

## C. Ineffective Assistance of Counsel

Ground Three (a) through (j), allege ineffective assistance of counsel ranging, *inter alia*, from counsel being ineffective for not objecting to the two-point enhancement for obstruction of justice under U.S.S.G. § 3C1.1; to counsel not pursuing a mitigating role reduction under U.S.S.G. § 3B1.1; to counsel intimidating and threatening Petitioner about sending her to prison, if she refused a "Plea Deal"; to counsel secretly recording his visits with Petitioner and eavesdropping on her by using a cell phone; to counsel lying about the whereabouts of Doretha Selby-Diggs; to counsel committing violations of her constitutional rights to due process and a fair trial; and to counsel's inadequate representation and general failure to provide competent representation throughout her trial, sentencing, and direct appeal. The litany of claims of ineffective assistance of counsel simply are without merit.

For example, the court has already addressed the lack of merit of the objections to the enhancement for obstruction of justice at sentencing, and the Preliminary Order of Forfeiture and the claim under United States v. Luis, both regarding the freezing of her pretrial assets. See *supra* Part III.B. Rehashing these allegations is to no avail. Also, counsel was not ineffective for failure to pursue a mitigating role reduction, as the petitioner was not entitled to such. Regardless of her

unproven claims of threats and intimidation by prosecutors and counsel for her to enter a plea deal, Petitioner accepted none and went to trial. There is no evidence whatsoever of any misrepresentations about the whereabouts of Doretha Selby-Diggs, nor is there any evidence whatsoever about counsel violating Petitioner's confidentiality by recording his visits or eavesdropping on her through use of a cell phone. There was no prosecutorial misconduct to which counsel could object regarding a constructive amendment of the indictment. See supra Part III.B. The bottom line is that the record reflects Petitioner had a full and fair sixteen-day trial, after which she was found guilty by the jury of False Statements Relating to Health Care Matters, in violation of 18 U.S.C. §§ 1035 and 2, and Theft of Public Money, in violation of 18 U.S.C. §§ 641 and 2. ECF No. 197; see also United States v. Harris, 706 F. App'x 105 (4th Cir. 2017) (affirming Petitioner's convictions and sentence). Her recitation of her counsel's errors in this court and on appeal are without record support, and show no violation of Strickland; Mr. Yarow's representation did not fall below an objective standard of reasonableness, and Petitioner was not prejudiced.

Accordingly, Petitioner's collateral attack on her conviction and sentence based on ineffective assistance of counsel fails. Ground Three is **DENIED**.

## D. Collusion

In Ground Four, Petitioner alleges "Collusion of Judicial Misconduct, Prosecutorial Misconduct and Ineffective Assistance of Counsel," set forth in Ground Four (a) and (b). Ground Four is largely duplicative of Petitioner's claims raised in Grounds One through Three.

Ground Four (a) claims that the court, the government, and counsel colluded to suppress critical Brady material by not providing correspondence from Mr. Opoku to Petitioner or the jury. To the extent this ground is duplicative of Ground Two (d), it is meritless. See supra Part III.B. To the extent this ground refers to different correspondence from Mr. Opoku, there was no Brady violation, because, as Petitioner admits, the government disclosed a copy of the correspondence to Petitioner's counsel.

Moreover, Ground Four (a) alleges that the trial court, the prosecutor, and Petitioner's counsel violated her constitutional rights by being "in contact with Mr. Opoku throughout the entire case." Mr. Opoku, the alleged leader of the health care fraud conspiracy, remains a fugitive.[10] He has never made an appearance in this court in this case. Had a judicial or law enforcement officer had knowledge of his whereabouts, he certainly would have been taken into custody for trial in this matter. There was

---

[10] See supra note 1 and accompanying text.

no information to be released to the jury or the movant about Mr. Opoku. Any information on the whereabouts of Mr. Opoku would have been given to the appropriate federal authorities to locate and arrest him. Again, to date, Mr. Opoku remains a fugitive from justice in this case, and his whereabouts are unknown to the court.

Basically, Ground Four (b) claims that the cumulation of all of the errors previously alleged in the petition violated Petitioner's constitutional rights. As discussed supra Parts III.A, III.B, and III.C, Petitioner's individual claims of error are meritless, and thus, Petitioner's constitutional rights were not violated by the cumulation of the errors she alleges.

To the extent that Ground Four (b) is a summary allegation of collusion and cumulative errors of the trial court, the prosecutor, and Petitioner's counsel, all of which she claims led to a violation of her rights to a fair trial and due process, Petitioner requests that she be exonerated of guilt and that a mistrial be declared. The frivolity of the allegations in Ground Four of collusion that should lead to Petitioner's exoneration deserve no further discussion from the court.

Accordingly, Petitioner's collateral attack on her conviction and sentence based on collusion fails. Ground Four is **DENIED**.

## IV. CONCLUSION

The Motion, files, and records of the case conclusively show that Petitioner is entitled to no relief. Accordingly, the court will neither hold an evidentiary hearing, United States v. Baysden, 326 F.2d 629, 631 (4th Cir. 1964), nor order the United States to file responsive pleadings, Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970). For the reasons stated herein, Petitioner's Motion is **DENIED** and **DISMISSED** in its entirety.

Petitioner is **ADVISED** that she may appeal from this Opinion by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within sixty (60) days of the date of this Opinion. For the reasons stated herein, the court declines to issue a certificate of appealability. The Clerk is **DIRECTED** to forward a copy of this Opinion to Petitioner; to the United States Attorney at Norfolk; and to Petitioner's trial and appellate counsel, Richard S. Yarow.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
United States District Judge

REBECCA BEACH SMITH
UNITED STATES DISTRICT JUDGE

August 5 , 2019